UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
REGINALD JOHNSON,

                    Plaintiff,

       -against-                13 CV 7173 (ARR) (VMS)

THE CITY OF NEW YORK, ROBERT
MAYER, VINCENZO DEMARTINO,
and DAVID GRIECO,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION IN LIMINE

Michael Lumer, Esq.
LUMER & NEVILLE
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Attorneys for Plaintiff

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES. ........................................................................... iii

ARGUMENT. .................................................................................................. 1

POINT I        PLAINTIFF'S INTERACTIONS WITH THE
               INDIVIDUAL DEFENDANTS PRIOR TO THE
               DATE OF HIS ARREST ARE IMPEACHMENT
               EVIDENCE. ............................................................... 1

POINT II       DEFENDANTS SHOULD BE PRECLUDED FROM
               INTRODUCING EVIDENCE OF PLAINTIFF'S
               TWO PRIOR FELONY CONVICTIONS. ........................... 2

               A.    Fed. R. Evid. 609 Not a Basis for Admission. ............. 2

                     1.   The 2005 Conviction Should Be Precluded
                          under Fed. R. Evid. 609(b). ............................. 3

                     2.   The Prior Convictions Should Be Precluded
                          under Fed. R. Evid 403. ................................. 5

               B.    The Length of Plaintiff's Incarceration
                     Should Be Precluded under Fed. R. Evid. 403. ............ 7

                     1.   Plaintiff's Prior Incarceration Should Be
                          Precluded Under Rule 403 or the
                          Determination of Damages Bifurcated. ............ 8

                     2.   If Plaintiff's Prior Incarceration Is to Be
                          Admitted and Bifurcation Denied, Plaintiff Will
                          Withdraw His Claim for Emotional Damages
                          as a Result of His Imprisonment. .................... 10

               C.    Nicole Agostini's Criminal History Is Inadmissible. ............ 13

POINT III      PLAINTIFF SHOULD BE PERMITTED TO
               INTRODUCE PATROL GUIDE VIOLATIONS. ................. 14

POINT IV          CITY LAWYERS ARE LAWYERS FOR THE CITY
                  AND INDEMNIFICATION SHOULD NOT BE AN
                  ISSUE. ................................................................................................ 15


POINT V           PLAINTIFF DOES NOT INTEND TO REQUEST
                  SPECIFIC DOLLAR AMOUNT. ............................................................ 16


POINT VI          DEFENDANTS SHOULD BE PRECLUDED FROM
                  INTRODUCING EVIDENCE OF PLAINTIFF'S
                  USE OF AN ALIAS TO PRESENT EVIDENCE OF
                  PLAINTIFF'S OTHER ARRESTS . ........................................................ 17


POINT VII         DEFENDANTS' USE OF THE OPEN ARREST
                  WARRANT ............................................................................................ 18


POINT VIII        PLAINTIFF SHOULD BE PERMITTED TO
                  INTRODUCE EXHIBITS 1, 4, 5, AND 9. ............................................ 18


POINT IX          THE JURY SHOULD NOT BE MISLED WITH
                  RESPECT TO NICOLE AGOSTINI'S STATUS. .............................. 20


POINT X           DEFENDANTS SHOULD BE PRECLUDED FROM
                  INTRODUCING THE SUBSEQUENT ARREST AS
                  THE ABSENCE OF A CONFESSION DOES NOT
                  PROVIDE ANY IMPEACHMENT VALUE. ...................................... 22


CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                <u>Page</u>

*Banushi v. Palmer*,
08 Civ. 2937 (KAM),
2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4,  2011)............................................................ 8, 10

*Cicero v. City of New York*,
11 CV 0360 (NGG),
2011 U.S. Dist. LEXIS 80880 (E.D.N.Y. July 25, 2011)............................................................ 8

*Daniels v. Loizzo*,
986 F. Supp. 245 (S.D.N.Y. 1997). ............................................................................ 3, 5-7

*Davis v. Velez*,
15 F. Supp. 3d 234 (E.D.N.Y. 2014),
aff'd, 797 F.3d 192 (2d Cir. 2015). ............................................................................ 8, 9

*Djangmah v. Falcione*,
2013 WL 6388364 (S.D.N.Y. Dec. 5, 2013). ...................................................................... 4

*Eng v. Scully*,
146 F.R.D. 74 (S.D.N.Y. 1993). ............................................................................... 4, 5

*Fletcher v. City of New York*,
54 F. Supp. 2d 328 (S.D.N.Y. 1999) ............................................................................. 6

*Gardner v. Federated Dep't Stores, Inc.*,
907 F.2d 1348 (2d Cir. 1990). ................................................................................ 11

*Green v. City of New York*,
465 F.3d 65 (2d Cir. 2006)..................................................................................... 19

*Hynes v. Coughlin*,
79 F.3d 285 (2d Cir. 1996).................................................................................... 7

*Kerman v. City of New York*,
374 F.3d 93 (2d Cir. 2004)................................................................................ 10, 11

*Lewis v. Velez*,
149 F.R.D. 474 (S.D.N.Y. 1993). ............................................................................... 6

*Martinez v. Port Auth. of N.Y. & N.J.*,
2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005) ................................................................. 11

*Michelson v. United States*,
335 U.S. 469 (1948). ........................................................................................................ 9

*Mileski v. Long Island R. R. Co.*,
499 F.2d 1169 (2d Cir. 1974). ....................................................................................... 17

*Monaghan v. SZS 33 Associates, L.P.*,
827 F. Supp. 233 (S.D.N.Y. 1993). ............................................................................. 10

*Nibbs v. Goulart*,
822 F. Supp. 2d 339 (S.D.N.Y. 2011) .......................................................................... 11

*Perez v. Duran*,
11 Civ. 5399 (JGK) (S.D.N.Y. Sept. 18, 2014) . .......................................................... 11

*Picciano v. McLoughlin*,
2010 WL 4366999 (N.D.N.Y Oct. 28, 2010). ............................................................... 6

*Robinson v. Holder*,
2008 WL 2875291 (S.D.N.Y. July 22, 2008). .............................................................. 11

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*,
605 F.2d 1228 (2d Cir. 1979) . ...................................................................................... 19

*Stephen v. Hanley*,
2009 WL 1471180 (E.D.N.Y. May 21, 2009) ................................................................. 6

*U.S. v. Ortiz*,
553 F.2d 782 (2d Cir. 1988). ............................................................................................ 6

*United States v. Brown*,
606 F. Supp. 2d 306 (E.D.N.Y. 2009). ........................................................................... 6

*United States v. Estrada*,
430 F.3d 606 (2d Cir. 2005). ........................................................................................... 2

*United States v. Gray*,
852 F.2d 136 (4th Cir.1988). ........................................................................................... 4

*United States v. LaTray,*
1989 WL 143355 (N.D.N.Y. Nov. 24, 1989),
aff'd, 935 F.2d 1277 (2d Cir. 1991). ................................................ 4

*United States v. Mahler,*
579 F.2d 730 (2d Cir. 1978). ........................................................... 3

*United States v. McClintock,*
748 F.2d 1278 (9th Cir. 1984),
cert. denied, 474 U.S. 822 (1985). ................................................... 4

*United States v. Wallace,*
848 F.2d 1464 (9th Cir. 1988). ........................................................ 4

*Wilson v. City of New York,*
06 Civ. 229 (ARR),
2006 U.S. Dist. LEXIS 90050 (E.D.N.Y. Dec. 13, 2006). ................. 8

*Wisdom v. Undercover Police Officer No. C0 127,*
879 F. Supp. 2d 339 (E.D.N.Y. 2012). ........................................... 10

*Zinman v. Black & Decker, Inc.,*
983 F.2d 431 (2d Cir. 1993). .......................................................... 3

Federal Rules

Federal Rule of Civil Procedure 42(b) ............................................. 10

Federal Rule of Civil Procedure 68. ................................................. 21

Federal Rule of Civil Procedure 801(d)(2) ...................................... 19

Federal Rule of Civil Procedure 803(6). ......................................... 19

Federal Rule of Evidence 403 . ......................................... 2, 5, 7, 8, 22

Federal Rule of Evidence 609 . .......................................................... 5

Federal Rule of Evidence 609(a) . ..................................................... 3

Federal Rule of Evidence 609(a)(1). ........................................................................................2, 5, 14

Federal Rule of Evidence 609(a)(1)(A). .................................................................................... 2

Federal Rule of Evidence 609(a)(2). .................................................................................... 2, 14

Federal Rule of Evidence 609(b). ........................................................................................ 3, 4

Federal Rule of Evidence 609(b)(1). ..................................................................................... 5

## ARGUMENT

## POINT I

## PLAINTIFF'S INTERACTIONS WITH THE INDIVIDUAL DEFENDANTS PRIOR TO THE DATE OF HIS ARREST ARE IMPEACHMENT EVIDENCE

Plaintiff should be permitted to introduce evidence that he was stopped and questioned by David Grieco prior to the November 23, 2012, arrest. Grieco has denied ever encountering plaintiff prior to the arrest in question. (See Transcript of David Grieco, annexed as Exhibit 1 to the Declaration in Opposition of Michael Lumer [the "Lumer Dec."] at pp. 39 and 83-84). Accordingly, plaintiff's testimony regarding the prior encounters is directly relevant to Grieco's credibility, as well as whether he had a preexisting bias toward plaintiff. Moreover, plaintiff's statement that Grieco had verbally harassed him previously is not unfairly prejudicial. There are no allegations of physical assault or any particularly egregious conduct, and certainly no basis to preclude plaintiff from challenging Grieco's claim that November 23, 2012, was the first time he had encountered plaintiff.

Plaintiff has no objection to not introducing post-arrest interactions with the defendants, provided that defendants are not themselves seeking to affirmatively reference any such events, including an arrest that they mischaracterize as occurring "under very similar circumstances," and which involved at least one of the defendants. (Def. Brief at 16). That arrest, of which defendants offer no information, was dismissed following plaintiffs' acceptance of adjournments in contemplation of dismissal.

**POINT II**

**DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S TWO PRIOR FELONY CONVICTIONS**

The defendants have affirmatively moved to introduce evidence of two prior felony convictions pursuant to Fed. R. Evid. 609(a)(1)(A). Both convictions, as identified by defendants, followed guilty pleas as follows: (i) December 21, 2005, Criminal Sale of a Controlled Substance in the Fifth Degree pursuant to NY Penal Law 220.31; and (ii) June 9, 2009, Criminal Conspiracy pursuant to Maine Statute 17-A 8371. At a minimum, defendants argue, they should be entitled to introduce the fact of the convictions without identifying the nature of the charges on the theory that the convictions are relevant to plaintiff's credibility. They also say they should be able to introduce evidence concerning the length of plaintiff's incarceration, not just for his convictions but also because of other, unspecified arrests. Defendants' arguments fail on both counts and the evidence should not be admitted.

**A.     Fed. R. Evid. 609 Not a Basis for Admission**

As an initial matter, defendants do not suggest that plaintiff's convictions are crimes of dishonesty that <u>must</u> be admitted under Rule 609(a)(2), but rather only that they are felonies that <u>may</u> be admitted under Rule 609(a)(1). *United States v. Estrada*, 430 F.3d 606, 615-16 (2d Cir. 2005) (admissibility of prior convictions under this subsection subject to Fed. R. Evid. 403 balancing test). These two convictions as presented by defendants fall far short of satisfying the Rule 403 balancing test and should not be allowed into evidence.

1.    The 2005 Conviction Should Be Precluded under Fed. R. Evid. 609(b)

Rule 609(a) is limited by Rule 609(b), which requires the preclusion of prior felony convictions "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Furthermore, "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1), (2).

As an initial matter, it is well settled that the "Second Circuit has recognized that Congress intended that convictions more than ten years old be admitted "very rarely and only in exceptional circumstances." *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (citing Zinman v. Black & Decker, Inc., 983 F.2d 431, 434 (2d Cir. 1993); and *United States v. Mahler*, 579 F.2d 730, 735 (2d Cir. 1978) (stating that Congress believed that convictions more than ten years old have very little or no probative value)).

The defendants acknowledge, as they must, that plaintiff's 2005 conviction occurred more than ten years ago. They further concede that he was released on parole on May 23, 2006, which is also more than ten years ago. Finally, they claim he was remanded for an unspecified parole violation on an unspecified date, and then released on October 2, 2007. (Def. Brief at 4). The defendants claim, without any legal authority, that the simple fact of plaintiff's parole violation and subsequent detention and release in 2007 necessarily means that it is not subject to the stringent admissibility test of Rule 609(b). They are mistaken.

3

Ordinarily, "[Rule 609(b)'s] ten-year period begins to run at the time of the release of the witness from the confinement imposed on that witness" and the possibility of parole revocation is of no consequent if the witness has already been released from confinement. *Eng v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. 1993). When, as is the case here, the witness is subsequently jailed for violating parole, that confinement only applies for 609(b) purposes if "a witness's parole is revoked for having committed a crime 'substantially related or parallel to the original ... conviction'" *United States v. LaTray*, 1989 WL 143355, at *4 (N.D.N.Y. Nov. 24, 1989), aff'd, 935 F.2d 1277 (2d Cir. 1991) (citing *United States v. Wallace*, 848 F.2d 1464, 1472 (9th Cir. 1988); *United States v. McClintock*, 748 F.2d 1278, 1288–89 (9th Cir. 1984), cert. denied, 474 U.S. 822 (1985)); but see, *Djangmah v. Falcione*, 2013 WL 6388364, at *12 (S.D.N.Y. Dec. 5, 2013) (citing, without discussion, *United States v. Gray*, 852 F.2d 136, 139 (4th Cir.1988)).

Thus, the mere fact that plaintiff violated parole and was briefly jailed less than ten years ago does not take it out of the ambit of Rule 609(b) unless the violation was for conduct substantially similar or related to the crime for which the plaintiff was on parole. The defendants have offered the Court no useful information in this regard, pointing only to plaintiff's "rap sheet," which itself provides no information as to what plaintiff may have done to trigger the parole violation or when these events occurred. All that defendants' Exhibit A indicates in this respect is that plaintiff was initially sentenced to a term of imprisonment of one year, with one year of parole to follow, and that at some point he was found in violation and reimprisoned. Whether this violation was for another arrest, and if so

4

the nature of the alleged crime, or simply a more benign failure to abide by a parole requirement that itself is neither criminal nor related to the underlying crime, is unknown.

The defendants here have made no showing, nor attempted to make a showing, that the 2005 conviction's "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" that the parole violation alters the calculation of the release from confinement date.  Fed. R. Evid. 609(b)(1). Accordingly, defendants should be precluded from introducing evidence of the 2005 conviction.

2.    The Prior Convictions Should Be Precluded under Fed. R. Evid 403

As the defendants acknowledge, even if both convictions were found to be less than ten years old, Rule 609(a)(1) requires that courts consider the probative value of a felony conviction in light of its prejudicial effect. (Def. Brief at 4); *Daniels,* 986 F.Supp. 245, 250 (S.D.N.Y. 1997) ("[a]s amended in 1990, Rule 609 now explicitly provides that prior convictions of all witnesses other than a criminal defendant, including witnesses in civil actions, shall be admitted subject to Rule 403." (citing Fed. R. Evid. 609(a)(1); 4 Weinstein's Federal Evidence § 609.04[3][a], at 609-36 (1997)); *Eng*, 146 F.R.D. at 78 (same).  Similarly, defendants agree that, when balancing probative value against prejudicial effect under Rule 609(a)(1), courts are to consider the following factors: (1) the impeachment value of the prior crime; (2) the remoteness of the prior conviction; (3) the similarity between the past crime and the conduct at issue in the present litigation; and (4) the importance of the credibility of the witness. *Daniels*, 986 F.Supp. at 250.

The single most important factor central to this analysis is whether the prior

5

crime is particularly probative of credibility. See *Stephen v. Hanley*, 2009 WL 1471180 at *4 (E.D.N.Y. May 21, 2009) ("[p]aramount among the factors to consider in the balancing analysis is whether the crime, by its nature, is probative of the lack of veracity" (citing *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1988))). Here, that dominant factor weighs heavily against admission as "[c]onvictions for narcotic offenses are usually not considered to involve dishonesty or false statement." 4 Weinstein's Federal Evidence § 609.03[2][b] [iii], at 609–16 (1997); *See, also, Picciano v. McLoughlin*, 2010 WL 4366999, *3 (N.D.N.Y Oct. 28, 2010); *United States v. Brown*, 606 F. Supp. 2d 306, 319 (E.D.N.Y. 2009); *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 332 (S.D.N.Y. 1999); *Daniels*. 986 F. Supp. at 249; *Lewis v. Velez*, 149 F.R.D. 474, 482 (S.D.N.Y. 1993).

Here, the 2005 conviction is for the criminal sale of a controlled substance, and by definition is a drug offense. The 2009 conviction is for criminal conspiracy, which plaintiff pled to in satisfaction of narcotics allegations, and thus this too is a narcotics offense. No further details have been offered by the defendants in their motion. Accordingly, these two remote convictions offer little to no impeachment value.

As for similarity, both are, broadly speaking, similar in that they too involve allegations of narcotics possession, and this is precisely the problem, as defendants themselves appear to concede. (Def. Brief at 5). Put simply, these convictions are not in any meaningful way probative of plaintiff's credibility, yet would be highly prejudicial to plaintiff for reasons that are entirely impermissible, and for which defendants likely seek their admission. More to the point, the convictions have no value except with respect to character

6

and propensity evidence, thus should not be admitted in any form. *Daniels*, 986 F. Supp. at 249 ("Instead, the proffer of such evidence amounts to nothing more than a veiled attempt to do what Rule 404(b) prohibits – introduce bad acts evidence to show a propensity to commit such acts"); *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996) (plaintiff's prison disciplinary records cannot be offered to show his aggressive nature in civil case concerning disputes about whether plaintiff was the aggressor in certain events).

Finally, the plaintiff's credibility is certainly an issue, although no more so than that of the three defendants. As these two drug convictions offer no insight into plaintiff's credibility, allowing into evidence the fact that he has been previously convicted of a crime would serve only to provide the jury with an improper reason (i.e., the bad character past criminal convictions suggest) to find against him without any legitimate basis.

**B.** **The Length of Plaintiff's Incarceration**
   **Should Be Precluded under Fed. R. Evid. 403**

The defendants have asked to introduce the length of plaintiff's incarceration on the theory that it is related to his claim for damages, but have failed to articulate an actual basis for this argument specific to the facts of this case. There is no basis for concluding that somehow the time plaintiff spent in custody following prior convictions made the eleven days he spent in custody in this case less stressful or unpleasant. Moreover, even if the time plaintiff spent in custody as a result of his prior convictions is admissible, it would be profoundly unfair to include time spent in custody as a result of arrests for which he was never convicted as counterweight to his damages claims. In any event, to the extent that the

Court finds that plaintiff's length of incarceration would otherwise be admissible as relevant to his damages claim, plaintiff asks that the Court bifurcate the liability and damages phases of the trial. Failing that, plaintiff would withdraw his claim for emotional damages resulting from his imprisonment, and proceed in that respect purely on a claim for lost liberty.

1.  Plaintiff's Prior Incarceration Should Be Precluded Under Rule 403 or the Determination of Damages Bifurcated

While some courts may have found that a plaintiff's prior incarceration may be relevant as to the degree of his emotional distress at being wrongly imprisoned on another occasion, the prejudice to plaintiff from such testimony outweighs its limited probative value.[1]  In a recent case, the Hon. Jack B. Weinstein addressed this very argument, noting "[defendants claim] that 'plaintiff has spent at least half of his life incarcerated in jail.' Defendants sought leave to 'get into plaintiff's criminal history—sorry, not his criminal history—but at least his criminal incarceration,' on the theory that plaintiff 'would not be as—for lack of a better word—damaged [by this experience] as a person who has never been to jail.'" *Davis v. Velez*, 15 F. Supp. 3d 234, 252 (E.D.N.Y. 2014), aff'd, 797 F.3d 192 (2d Cir. 2015) (Internal citations to trial transcript omitted).

The Court rejected this argument at trial and again thereafter when addressing

---

[1]  In this regard, several of the defendants' citations are misleading. For example,  in both *Cicero v. City of New York*, 11 CV 0360 (NGG), and *Wilson v. City of New York*, 06 Civ. 229 (ARR), the rulings upon which defendants rely were discovery rulings made by the assigned Magistrate Judges which expressly left future questions of admissibility for the trial judges' later resolution. In the very same January 4, 2011 ruling in *Banushi v. Palmer*, 08 Civ. 2937 (KAM) cited by defendants, the Court noted that the parties had already agreed to bifurcate the  liability and damages phases of the trial, thus removing Rule 403 considerations from the calculus. As Mr. Francolla was the defense attorney in *Banushi*, he surely must have been aware of this material distinction.

the defendants' post-trial motion, ruling:

> Evidence of plaintiff's jail time carried a grave risk of unfair
> prejudice, confusing the issues, and misleading the jury. A
> party's past encounters with the law are generally excluded not
> 'because character is irrelevant; on the contrary, it is said to
> weigh too much with the jury and to so overpersuade them as to
> prejudge one with a bad general record and deny him a fair
> opportunity to [litigate his case]. The overriding policy of
> excluding such evidence, despite its admitted probative value, is
> the practical experience that its disallowance tends to prevent
> confusion of issues, unfair surprise and undue prejudice.' The
> evidence would have had limited probative value. Plaintiff
> described the basic loss of liberty any inmate experiences at
> Rikers Island and MDC. He did so briefly and in bare, factual
> terms. **There is no reason to believe his previous jail
> experience would have significantly alleviated his distress
> at being wrongfully deprived of his basic freedoms during
> the thirteen months he was jailed**.

*Id.* (emphasis supplied) (Quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)).

Here, plaintiff is not arguing that he suffered any particular emotional injuries

by virtue of his imprisonment at Rikers Island following his arrest and arraignment, or that

he is still somehow emotionally damaged because of that imprisonment. Rather, he has

testified that the arrest and prosecution caused him distress, as he was facing felony charges

for crimes he did not commit. This is not to say that the jail time did not as well, but rather

that plaintiff is not claiming any particularized injury or event that would be mitigated or

lessened by the fact that he had been in prison previously. Thus, whatever limited value this

evidence might have with respect to plaintiff's emotional damages would be greatly

outweighed by allowing the jury to know that he has spent time in prison previously (and

thus is a criminal of poor character, has a propensity for criminal conduct, and so forth).

Should the Court be inclined to allow the defendants to introduce plaintiff's incarceration history into evidence for purposes of attacking plaintiff's claim for damages, the Court ought to bifurcate the trial under Fed. R. Civ. P. 42(b) and allow the evidence of plaintiff's prior incarceration solely during the damages phase after liability has been established. *Wisdom v. Undercover Police Officer No. C0 127*, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) ("Accordingly, 'to avoid prejudice,' the trial will be bifurcated into two phases: one addressing the defendants' liability; and a second to assess damages should [plaintiff] establish the defendants' liability"); *Banushi v. Palmer*, 2011 WL 13894, *3 (E.D.N.Y. Jan. 4, 2011) (Parties consented to bifurcate trial as to liability and damages); *Monaghan v. SZS 33 Associates, L.P.*, 827 F. Supp. 233, 244 (S.D.N.Y. 1993) (discussing bifurcation and separate trials of liability and damages). Notably, in *Banushi*, the same individual counsel for defendants agreed to bifurcate liability and damages, and such an outcome would be appropriate here to ensure that whatever probative value this evidence might have with respect to damages does not result in unfair prejudice to plaintiff's claims regarding liability.

2.   If Plaintiff's Prior Incarceration Is to Be Admitted and Bifurcation Denied, Plaintiff Will Withdraw His Claim for Emotional Damages as a Result of His Imprisonment

It is well settled that a plaintiff's claims for emotional damages as a result of a period of incarceration are distinct and separate from a damages claim for the value of his lost liberty. *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004). As has been noted, "[i]t is clear under Second Circuit law that damages associated with lost liberty are distinct and independent from those arising from such injuries as physical harm, embarrassment, or

emotional suffering." *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2011) (citing *Kerman*, 374 F.3d at 125; *Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir.1990) ( "[T]he damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident."); *Robinson v. Holder*, 2008 WL 2875291, at *2 (S.D.N.Y. July 22, 2008) (finding no evidence of physical or mental injury and calculating loss of liberty damages by comparing to other lost liberty awards on a per day basis); *Martinez v. Port Auth. of N.Y. & N.J.*, 2005 WL 2143333, at *19–20 (S.D.N.Y. Sept. 2, 2005) (finding lost liberty damages to be independent type of damages and calculating by comparison to other awards involving similar arrest and detention scenarios and durations)).

As the Court in *Nibbs* noted, while "a plaintiff's frequent arrests and detentions may diminish the emotional toll or embarrassment caused by the arrest and detention at issue, they do nothing to diminish the fundamental loss of freedom implicated in a false arrest. Therefore, Nibbs's arrest history is irrelevant to the question of lost liberty damages—the only type of damages Nibbs now seeks." *Nibbs*, 822 F. Supp. 2d at 345.

This reasoning was recently echoed and reaffirmed in *Perez v. Duran*, 11 Civ. 5399 (JGK) (S.D.N.Y. Sept. 18, 2014) during a pretrial conference. There, plaintiff withdrew his emotional damages claim after the Court indicated that it was going to admit his arrest and conviction history as relevant to the emotional damages claim, following which the Court stated, "the jury will be instructed that a prevailing plaintiff is entitled to compensatory damages for the loss of liberty inherent in a false arrest, a malicious prosecution, and a denial

of the right to a fair trial. The defendant argues that the plaintiff's prior arrests and

convictions are relevant to the plaintiff's loss of liberty damages.  This argument is without

merit. (Quotation from *Nibbs* omitted)."  (See transcript of proceedings annexed to the

Lumer Dec. as Exhibit 2 at p. 30).

   Notably, when the defendants continued to press the idea that plaintiff's

criminal history would still be relevant because it would provide the jury with a "frame of

reference when calculating damages with respect to loss of liberty and this individual

plaintiff,", the Court unequivocally rejected their argument:

> That argument is so fundamentally  offensive.  I can't begin to
> explain how offensive the argument is.  It suggests that the
> value of liberty to a person who has been arrested often is less
> than the value of liberty to a person who has not been arrested.
> And that is offensive. . . .
>
> So what is left?  What is left is a claim, which the courts have
> recognized, that every individual has a liberty interest which is
> infringed when a person is falsely arrested or maliciously
> prosecuted.  And every individual has a worth, and that worth is
> the ability to do whatever that person wants to do with that
> person's time, not to spend that time in jail. And the worth of
> an individual and that person's time is the same whether that
> person has been arrested a lot of times or not a lot of times.
> And it would be wrong to begin to assess citizens, or
> noncitizens, in terms of whether their time is worth more or less
> based upon whether they have been arrested many times before
> or not.  It would attempt to devalue the worth of individuals,
> and you can't do that.  That's why I said your argument is
> wrong. . . .

Exhibit 2 at 34-35, 38.

   The Court responded to defendants' subsequent inquiry into the scope of the

testimony plaintiff would be entitled to offer concerning his imprisonment, which Judge

Koeltl defined as follows:

> You know what the plaintiff is going to say.  You have the plaintiff's deposition.  No one has favored me with the specific portions, but I would think that the plaintiff would be entitled to introduce the plaintiff's testimony about how long the plaintiff was put in a cell, what the circumstances of the cell were.  And, in turn, there are, as I have already indicated, some instructions:  The plaintiff is not seeking emotional damages.  If you find that there was a false arrest, the plaintiff is entitled to compensatory damages, not simply nominal damages.

Exhibit 2 at 38.

Plaintiff therefore would withdraw his claim for emotional damages suffered by virtue of his imprisonment, were this Court to otherwise find plaintiff's convictions or length of incarceration admissible and reject his request for bifurcation, .

## C.    Nicole Agostini's Criminal History Is Inadmissible[2]

For the reasons set forth above, above, the defendants should not be permitted to introduce any evidence of Ms. Agostini's criminal history. She has testified that she was arrested in or around 2010 and pled guilty to possession of marijuana, for which she was sentenced to a term of probation.  This arrest did not involve plaintiff, and Ms. Agostini believed plaintiff was unaware of this conviction. She was later arrested with plaintiff, as discussed elsewhere in this brief, subsequent to the events at issue in this litigation, and that prosecution was ultimately dismissed. None of these events are remotely relevant and should be precluded under Rule 403.

---

[2] The defendants have not moved to admit evidence of any prior arrests or convictions concerning Nicole Agostini.

13

The defendants have made no showing that the 2010 conviction was one admissible under Rule 609(a)(1) or (2), nor is there any reason to believe from the limited record that the conviction would satisfy the requirements of the rule. The conviction appears to be related to the possession of marijuana, and thus has limited to no probative value, yet would, under the facts and circumstances of this case, be highly prejudicial and misleading.

The subsequent arrest is simply inadmissible. The arrest and prosecution in question resulted in a dismissal, and thus are irrelevant to her testimony. She is not seeking damages and this backdoor argument has no applicability with respect to this witness.

**POINT III**

**PLAINTIFF SHOULD BE PERMITTED TO
INTRODUCE PATROL GUIDE VIOLATIONS**

Defendants' motion to preclude any reference to the NYPD Patrol Guide should be denied.  As an initial matter, this case, at least in all ways relevant to this issue, is materially different from *Martin v. Giordano*, as referenced in defendants' Exhibit D. The plaintiff in *Martin* affirmatively identified one or more provisions of the Patrol Guide as exhibits in the pretrial order but failed to provide the Court with the materials or language at issue. Moreover, Martin's apparent intent was to argue that the defendants' use of force against him violated the NYPD's applicable provisions governing the use of force, which the Court found would be confusing and misleading for the jury. (Def. Exh. D at 26-28). None of these considerations apply here.

To be clear, plaintiff is not alleging that the defendants' entry, arrest, or

14

involvement in his prosecution violated the Patrol Guide.  Rather, as set forth in that portion

of his motion *in limine* that was filed under seal, there are issues concerning the individual

defendants' documentation of the circumstances surrounding plaintiff's arrest, and similar,

prior issues, all of which are relevant to the defendants' credibility as discussed in the sealed

filing. Whether the defendants deliberately engaged in conduct that was designed to cover up

their actions, and did so with the knowledge and understanding that this conduct would

violate the Patrol Guide and subject them to possible disciplinary proceedings.

   For the reasons set forth in his sealed application, plaintiff urges the Court to

deny defendants' motion with respect to the relevant provisions of the Patrol Guide. In the

alternative, a simple jury instruction would easily avoid the harms defendants imagine.


## POINT IV

### CITY LAWYERS ARE LAWYERS FOR THE CITY AND INDEMNIFICATION SHOULD NOT BE AN ISSUE

   This part of defendants' motion bundles several issues together. First, the

notion that plaintiff should not be able to refer to the City attorneys as the City attorneys in a

case where the City is a party to the case by virtue of plaintiff's state law claims is as silly as

plaintiff asking that his attorneys not be called attorneys for Reginald Johnson. However,

plaintiff will agree not to refer to the City attorneys as such if there is an agreement by all

concerned that (a) the City will pay the full amount of any judgments or awards against the

individual defendants, and (b) the individual defendants were acting in the scope of their

employment at all relevant times.

Second, if such an agreement is in place, plaintiff would forego referencing the City of New York, or seeking to elicit testimony or otherwise injecting the City as a party, and would further agree to a verdict sheet and jury charge that omits any question concerning the municipal defendant.  To be sure, this is not what the law requires; the City is indeed a party. However, plaintiff offers this compromise in the interest of cooperation and efficiency.  This is not to say the defendant can be removed from the caption, as the municipality is still a defendant and thus is properly identified as such. But plaintiff would agree not to make any such references and, with the above stipulation in place, forego a reference to the City on the verdict sheet or in the jury charge.

As to indemnification, plaintiff has no intention of raising the issue before the jury, provided that the defendants agree that there is to be no suggestion that the City would not otherwise pay whatever damages may be awarded, or otherwise imply in any way that the individual officers will be liable for the punitive damages or that it is their ability to pay or financial resources which the jury must consider in calculating punitive damages.

## POINT V

**PLAINTIFF DOES NOT INTEND TO REQUEST SPECIFIC DOLLAR AMOUNT FROM JURY**

While plaintiff does not intend to request that the jury award a specific amount of compensatory damages, he respectfully reserves the right to do so, upon notice to the Court and defendants, depending on how defendants present their case to the jury with respect to the valuation of the case. While the Second Circuit prefers that counsel not

16

recommend exact dollar damages, the Court long ago rejected calls for a prohibition on the practice, leaving the decision to the trial judge's discretion.

> We have been unwilling to adopt such a drastic measure as a flat prohibition, preferring a more flexible approach that would leave the matter largely to the trial judge's discretion. Since the trial judge is usually better able on the basis of his acquaintanceship with the evidence in each case to gauge the potentiality for abuse and to determine whether such references by counsel may have an unduly prejudicial effect upon the jury, he should remain free in his discretion either to prohibit trial counsel from giving the jury any opinion as to specific amounts that might be awarded for pain and suffering or to impose such reasonable limitations as he may prescribe.

*Mileski v. Long Island R. R. Co.*, 499 F.2d 1169, 1174 (2d Cir. 1974) (internal citations omitted).

Thus, plaintiff reserves his right to raise this issue at a future date if he deems it warranted under the circumstances.

## POINT VI

### DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S USE OF AN ALIAS TO PRESENT EVIDENCE OF PLAINTIFF'S OTHER ARRESTS

The plaintiff has not denied the prior use of aliases in the context of other arrests and will not do so here. However, to the extent that the Court believes that such testimony is relevant for credibility purposes, evidence that plaintiff has previously used aliases in his dealings with members of law enforcement should be limited to just this fact, and not serve as a means to then discuss the arrests themselves.

17

**POINT VII**

**DEFENDANTS' USE OF THE OPEN ARREST
WARRANT TO MITIGATE THEIR DAMAGES**

Plaintiff does not dispute that defendants are entitled to mitigate their damages
with respect to plaintiff's detention from the time they learned of his open bench warrant,
which by all accounts occurred sometime after his arrival at the station house while
defendants were processing the arrest, until his arraignment.  (Def. Brief at 13).

**POINT VIII**

**PLAINTIFF SHOULD BE PERMITTED TO
INTRODUCE EXHIBITS 1, 4, 5, AND 9**

The plaintiff should be permitted to use these exhibits in his case in chief.
Exhibits 1 and 9 are business records created by the Kings County District Attorney's office
("KCDA") that contain statements by one or more of the individual defendants. Exhibits 4
and 5 are the handwritten and subsequent computerized arrest reports for Ms. Agostini that
were created on the night of the arrest by defendant DiMartino. All four documents contain
statements made by DiMartino which he recorded or made to others. All of these statements
are relevant and there is no possible bar to their use at trial.

Exhibits 1 and 9 are both KCDA documents that are plainly admissible. The
former is known as a Screening Sheet and, as is evident on its face, contains information
taken from defendant DiMartino on November 24 concerning the circumstances
surrounding the plaintiff's arrest on November 23, 2012. The latter is what is known as

18

Statement Notice, and is a formal notice served by the KCDA pursuant to state law advising criminal defendants of any statements they are alleged to have made, the date, time, and place of the statements, and to whom they were made.

Both documents are admissible as party admissions under Rule 801(d)(2) or as the KCDA's business records maintained in the regular course of the KCDA's operations pursuant to Rule 803(6).[3] To the extent that the document reports out-of-court statements made by defendant DiMartino, such double hearsay does not preclude admissibility. *See Green v. City of New York*, 465 F.3d 65, 77 (2d Cir. 2006) ("The City also argues that [the police officer's] statement is hearsay. Of course, it is not. . . . [B]ecause [the police officer] spoke within the scope of his employment with . . . the City, the statement is admissible as a party admission against the City."); *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228 (2d Cir. 1979) (complaint report made in regular course of business activity of police department, which reported to be based on information from defendant union official, is admissible under Rule 803(6) without testimony by preparer of report that defendant made statements attributed to him).

They are also immediately relevant in a number of obvious ways. The individual defendants' communications with the KCDA are an essential element as to both their role in initiating plaintiff's prosecution (the malicious prosecution claim) and their

---

[3] With respect to Exhibit 1, ADA David McMaster has testified that the Screening Sheet is a business record created by the KCDA in the ordinary course of business and reflects statements made by DiMartino to the KCDA. (See deposition transcript of David McMaster annexed to the Lumer Dec. as Exhibit 3 at pp. 48-58.)  As for Exhibit 9, the defendants do not object on authenticity grounds, and cannot as this is plainly a standard KCDA form.

forwarding of fabricated communications to prosecutors (the fair trial claim). Thus, the individual defendants' communications with the KCDA and the allegations they forwarded are core components of the claims. They are also plainly relevant as to the false arrest claim because they are admissions by a party concerning the very factual issues in dispute, including inculpatory oral statements defendants claim plaintiff made.

As for Exhibits 4 and 5, these are both records created by DiMartino that set out the allegations initially made against Ms. Agostini and they are both very much an essential part of the case. There is no Rule 403 issue as defendants do not, and could not, identify any harm that might occur from their admission. This is particularly true given that there will be no dispute that Ms. Agostini was arrested and then released after plaintiff signed a confession. The statements are relevant evidence as to precisely why defendants claimed they arrested Ms. Agostini in the first place, and are therefore admissible.

## POINT IX

## THE JURY SHOULD NOT BE MISLED WITH RESPECT TO NICOLE AGOSTINI'S STATUS AS A PLAINTIFF OR THAT SHE HAS FILED AN ACTION AGAINST THESE SAME DEFENDANTS

The defendants cannot dispute that Ms. Agostini and plaintiff were arrested together inside their apartment and transported to a precinct. Later that night, the defendants voided Ms. Agostini's arrest and released her from custody without charges. As reflected in the docket of this case, Ms. Agostini was a plaintiff to this lawsuit when it was first filed on December 17, 2013, alleging that the defendants unlawfully entered and searched her home

20

and falsely arrested her.  (See Complaint, docketed as Document 1).  It is further undisputed

that Ms. Agostini accepted a Rule 68 Offer of Judgment for $7,501 on August 19, 2014, and

the Notice of Acceptance, and accompanying Offer, were docketed as Documents 17 and

17-1. Judgment was not formally entered and so the issue of her outstanding claim for legal

fees and costs remains unadjudicated.  Plaintiff expects to call Ms. Agostini as a witness for

the primary purpose of testifying to the events surrounding the defendants' entry into the

premises and the arrest and prosecution that ensued.

       The defendants now suggest "Ms. Agostini should be treated by both sides at

trial as if her lawsuit never existed and instead, questioned like a traditional non-party

witness."  Plaintiff objects. Such a draconian action is both inappropriate and unwarranted.

       By all accounts Ms. Agostini was similarly situated to plaintiff until the

defendants elected to void her arrest and proceed against plaintiff.  It would be obvious to

the jury that any constitutional injuries inflicted on plaintiff by virtue of the defendants' entry

into plaintiff's apartment, search of the apartment, and arrest of plaintiff, were suffered

equally by Ms. Agostini.  Wrongly conveying that Ms. Agostini did not also pursue a claim

against these defendants is circumstantial evidence that she (a) did not engage in such

litigation, thus indicating that she (b) believed or was told that such claims were without

merit, and (c) that there were other reasons why she did not or could not participate in the

litigation.

       Plaintiff asks that the Court, at a minimum, allow the jury to know that Ms.

Agostini also filed suit based on the entry, search, and arrest. To the extent that the Court

believes that further information should be withheld under Rule 403, a proper limiting instruction can surely be fashioned directing the jury not to speculate as to the state or outcome of the action.  Failure to provide this modicum of information would materially mislead the jury and otherwise prejudice the plaintiff and defendants' motion should be denied.

## POINT X

### DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING THE SUBSEQUENT ARREST AS THE ABSENCE OF A CONFESSION DOES NOT PROVIDE ANY IMPEACHMENT VALUE

The defendants attempt to argue that the fact that plaintiff did not confess when he and Ms. Agostini were arrested subsequent to the November 23, 2012, arrest is grist for impeachment. It is not, as defendants' argument omits and misstates the material facts.

As an initial matter, defendants argue that plaintiff and Ms. Agostini "were both arrested subsequent to the underlying incident under very similar circumstances, however, plaintiff did not confess or even volunteer to do so in order to help out Agostini at that point." (Def. Brief at 16). This claim contains two fundamental factual flaws. First, it states without any basis that the facts surrounding subsequent arrest of plaintiff and Ms. Agostini were "very similar." The defendants have yet to identify the charges or the circumstances of the arrest, or provide any support for their oft-stated claim of great similarity.

Second, it implies that plaintiff had initiated the discussion with the officers

22

that led to his confession. This implication wrongly suggests that in the present case, plaintiff had volunteered to confess, and thus his failure to step forward following the second arrest undermines his stated basis for the first confession. This argument is contradicted by the testimony of not only the plaintiff but also defendant DiMartino.

   To put the matter most simply, DiMartino has testified that he approached plaintiff, that he offered plaintiff an opportunity to ensure Ms. Agostini's release in exchange for a statement by plaintiff that he possessed the narcotics, and that this resulted in plaintiff signing the confession. (See deposition transcript of Vincenzo DiMartino, annexed to the Lumer Dec. as Exhibit 4 at pp. 173, 189-190). This testimony dovetails with that of plaintiff, who testified that he was approached and told that if he signed a statement, Ms. Agostini would go home. (Def. Exh. A at 127-148; deposition transcript of Reginald Johnson, annexed to the Lumer Dec. as Exhibit 5, at 168). No such offers were made to plaintiff during or after the subsequent arrest, nor do defendants suggest that they were.

   That plaintiff was not offered a similar deal, and did not attempt to broker a similar deal when he was later arrested with Ms. Agostini a second time is not a basis to impeach; it's simply an attempt to introduce the fact of the second arrest through the back door, and the motion should be summarily rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motion in all material respects, and for all other relief that this Court deems necessary and appropriate.

Dated: New York, New York
        May 17, 2016

                                    LUMER & NEVILLE
                                    Attorneys for Plaintiff
                                    225 Broadway, Suite 2700
                                    New York, New York 10007
                                    (212) 566-5060


                                    _____
                                    Michael Lumer


cc:     All counsel of record (By ECF)

24