13 CV 7173 (ARR) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

REGINALD JOHNSON,

                              Plaintiff,

                -against-

THE CITY OF NEW YORK, ROBERT MAYER,
VINCENZO DIMARTINO, DAVID GRIECO,

                              Defendants,

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION *IN LIMINE* FILED UNDER SEAL**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
   *Attorney for Defendants*
   *New York, N.Y. 10007*

   *Of Counsel:*
   *Brian Francolla*
   *Nana Sarpong*
   *Tel: (212) 356-3527/0827*

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

    POINT I

        PLAINTIFF SHOULD BE PRECLUDED FROM
        INTRODUCING EVIDENCE OF OR
        QUESTIONING DEFENDANTS ON
        UNRELATED ALLEGATIONS OF
        MISCONDUCT, UNRELATED DISCIPLINE,
        THE INTERNAL AFFAIRS INVESTIGATION
        INTO THE UNDERLYING INCIDENT AND
        UNRELATED LAWSUITS ..................................................................................... 1

        A.    Any Unrelated Discipline Pertaining To Defendants'
               Failure To Properly Maintain Their Memo Books Fails
               To Satisfy Any Exception To Rule 404(b)........................................... 2

        B.    The Proffered Evidence Fails To Qualify As "Pattern
               Evidence" Pursuant To Rule 404(b) And Should Be
               Precluded. ............................................................................................ 5

        C.    Even If Plaintiff Could Satisfy One Of The Exceptions
               To Rule 404(b), The Evidence At Issue Should Be
               Precluded On Rule 403 Grounds.......................................................... 9

        D.    Evidence Of IAB's Investigation Into The Underlying
               Incident Should Be Precluded ............................................................ 10

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

Berkovich v. Hicks, 922 F.2d 1018 (2d Cir. 1991) ........................................................................ 5

Isa Martin v. City of New York, et al., 14-CV-4507 (ARR) (JO) ..................................... 1,2,5,8,11

Stephen v. Hanley, 03-CV-6226 (KAM) (LB),
    2009 U.S. Dist. LEXIS 43334 (E.D.N.Y. May 21, 2009) ............................................................ 9

United States v. Benedetto, 571 F.2d 1246 (2d Cir. N.Y. 1978) ....................................................... 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

REGINALD JOHNSON,

                              Plaintiff,

-against-

THE CITY OF NEW YORK, ROBERT MAYER,
VINCENZO DIMARTINO, DAVID GRIECO,

                            Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION *IN LIMINE* FILED UNDER SEAL**

13 CV 7173 (ARR) (VMS)

------------------------------------------------------------------------ x

## POINT I

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OR QUESTIONING DEFENDANTS ON UNRELATED ALLEGATIONS OF MISCONDUCT, UNRELATED DISCIPLINE, THE INTERNAL AFFAIRS INVESTIGATION INTO THE UNDERLYING INCIDENT AND UNRELATED LAWSUITS

Defendants submit that plaintiff's request to introduce evidence of prior bad acts fails to satisfy any exception under Fed. R. Evid. 404(b). Defendants further submit that even if plaintiff were able to satisfy that high burden, the evidence at issue should be excluded pursuant to Rule 403 on the grounds that it is not relevant, would be unduly prejudicial and would represent a significant waste of time.

As this Court has previously stated, the applicable rule governing plaintiff's request is Rule 404(b). See Transcript of March 9, 2016 Pretrial Conference in Isa Martin v. City of New York, et al., 14-CV-4507 (ARR) (JO) ("Martin Transcript"), annexed to the Declaration of Brian Francolla dated May 16, 2016 ("Francolla's Decl.") as Exhibit "A," p. 19. Rule 404(b) "governs crimes, wrongs, and other accounts, and provides that they are

inadmissible 'to prove a person's character, in order to show that on a particular occasion, the person acted in accordance with the character.'" Id. (quotation omitted). Plaintiff's request, while veiled as one made pursuant to several Rule 404(b) exceptions, is focused solely on introducing evidence of prior bad acts to show that the defendants acted in conformity therewith.

### A. Any Unrelated Discipline Pertaining To Defendants' Failure To Properly Maintain Their Memo Books Fails To Satisfy Any Exception To Rule 404(b).

Plaintiff argues that the defendants' unrelated history of discipline for failure to properly document law enforcement interactions is "highly probative as to the truthfulness of their entire narrative." See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion *in Limine* ("Pl's Mem."), p. 7. The only specific aspect of defendants' version of events which plaintiff refers to as evidence in support of his grand conspiracy is the defendants' interaction with Tyhill Trinidad.[1] According to plaintiff, defendants purposely declined to document this encounter, even though they knew they had an obligation to do so, because it either did not happen or it occurred under circumstances which they did not want to reveal. Id. Plaintiff further argues that as a result, and in light of defendants' prior discipline pertaining to incomplete memo book entries, he should be permitted to introduce evidence of prior bad acts to suggest to the jury that defendants' failure to document their encounter with Trinidad was not simply a mistake, but a deliberate cover-up. Id. at 7-9. This argument fails for numerous reasons.

As an initial matter, plaintiff is incorrect when he asserts that defendants had an obligation to document the interaction with Trinidad. The Internal Affairs Bureau ("IAB") investigated the underlying incident and while they did find that Sergeant Dimartino and Police

---

[1] Plaintiff referred to this individual in his moving papers as "JD." Because this motion will be filed under seal, defendants have identified this individual by his real name.

Officer Mayer[2] both had memo book entries which were determined to be improper and incomplete, those deficiencies had nothing to do with defendants' decision not to document their interaction with Trinidad. See Pl's Mem., Exhibit 10. This is true even though IAB was made aware of the fact that the interaction took place. See Pages from IAB File #2013-46862, annexed to Francolla's Decl. as Exhibit "B," pp. D179-D180. Thus, plaintiff's argument fails at the outset due to the faulty assumption that defendants' decision not to document their interaction with Trinidad was some sort of "failure" or in violation of New York City Police Department ("NYPD") procedure.

Plaintiff's argument also mistakenly implies that defendants will attempt to explain the absence of documentation pertaining to their interaction with Trinidad as an "inadvertent oversight." See Pl's Mem., p. 7. Police Officer Grieco – the defendant who had the most interaction with Trinidad – testified during his deposition that information pertaining to the interaction with Trinidad is "not something you would write in the memo book." See Police Officer Grieco's March 11, 2015 Deposition, annexed to Francolla's Decl. as Exhibit "C," p. 181: 3 – 17. While the explanation for this statement was not further explored during Police Officer Grieco's deposition, the undersigned can represent that defendants will not be claiming at trial that they made a mistake by not documenting their interaction with Trinidad.

Moreover, the general argument that the defendants were either making up the interaction with Trinidad or for some reason trying to cover it up defies logic considering that it was two of the individual defendants who found Trinidad after this lawsuit had already commenced while the parties were still conducting discovery. See Police Officer Mayer's March

---

[2] Plaintiff incorrectly asserts that Police Officer Grieco was also found to have made incomplete and inaccurate entries in his memo book with respect to plaintiff's arrest. See Pl's Mem, p. 5 compared with Pl's Mem, Exhibit 10.

17, 2015 Deposition, annexed to Francolla's Decl. as Exhibit "D," pp. 226: 1 – 238: 17. Although Trinidad denied during his deposition to ever interacting with defendants in the way they say – a fact which would come as no surprise regardless of whether the interaction actually happened – that deposition only occurred because of efforts made by the individual defendants.

To the extent Sergeant Dimartino and Police Officer Mayer were found by IAB to have incomplete and inaccurate memo books with respect to plaintiff's arrest, the deficiencies have nothing to do with any alleged fabrication and are completely irrelevant. It was determined that Sergeant Dimartino failed to list the pedigree information of the two individuals who were arrested at 1815 – plaintiff and Nicole Agostini – even though he did list their names. See Pl's Mem., Exhibit 10; see also Pages from IAB File #2013-46862, Francolla's Decl., Exhibit "B," pp. D157-D158. Similarly, it was determined that Police Officer Mayer skipped a line in his entry that day and mistakenly wrote that one person had been arrested during the underlying incident rather than two. See Pl's Mem., Exhibit 10; see also Pages from IAB File #2013-46862, Francolla's Decl., Exhibit "B," pp. D159-D160. In sum, the only deficiencies noted by IAB pertaining to defendants' documentation of the underlying incident were either purely technical or obviously a mistake and notably, none of the deficiencies pertained to anything that is actually in dispute. This is simply no basis to justify permitting plaintiff to introduce evidence of 15 unrelated instances where a defendant officer was determined to have improper or incomplete memo book entries. Nothing is stopping plaintiff's counsel from cross-examining the defendants about what is and is not in their memo books to the extent that in his opinion the defendants' entries are somehow deficient. However, the opinion of counsel should not permit prior bad act evidence to be introduced especially considering that IAB disagrees with his opinion.

### B. The Proffered Evidence Fails To Qualify As "Pattern Evidence" Pursuant To Rule 404(b) And Should Be Precluded.

Plaintiff next argues that the prior bad acts he relies on in his motion qualify as pattern evidence under Rule 404(b) and thus should be admitted. See Pl's Mem., pp. 9-11. As this Court has previously noted, "under the law of this Circuit, admission of extrinsic acts is only permitted if those acts share 'unusual characteristics' with the acts alleged or represent a 'unique scheme.'" Martin Transcript, Exhibit "A," p. 19 (citing Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. N.Y. 1978)).

Here, plaintiff's moving papers are devoid of any specific analysis linking the allegations in this case with the unrelated prior bad act evidence he seeks to admit at trial. Plaintiff simply states that the underlying incident shares distinctive characteristics with the unrelated incidents because all involve "a warrantless entry, abuse of authority and inquiry into and search for the presence of firearms, and a general failure to document basic events." See Pl's Mem., p. 11. The vague and generalized connections referenced by plaintiff are clearly insufficient to allow for the extrinsic acts at issue to be admissible as pattern evidence. See Martin Transcript, Exhibit "A," pp. 19-20 ("As the Second Circuit has explained for extrinsic acts to be admissible as pattern evidence 'much more is demanded than the mere repeated commission of acts of the same class.' The extrinsic acts must be 'so nearly identical in method as to earmark them as the handiwork of the accused' or 'so unusual and distinctive as to be like a signature.'") (citing Benedetto, 571 F.2d at 1249 (quotation omitted)).

Plaintiff's allegations in this case are essentially as follows: defendants 1) fabricated an interaction with Tyhill Trinidad to explain why they went to plaintiff's house in the first place; 2) set in motion a plan to frame plaintiff by having Police Officer Mayer set up in an

adjacent backyard while Sergeant Dimartino and Police Officer Grieco knocked on the front door of plaintiff's apartment building;[3] 3) eventually forced their way into plaintiff's apartment without justification based on the false pretext that Police Officer Mayer observed plaintiff throw a bag filled with heroin and marijuana out of his back window; and 4) used the leverage created by their misdeeds up to that point, including the false arrest of Agostini, to force plaintiff into signing a false confession, which he did. Not surprisingly, the purported pattern evidence plaintiff seeks to introduce is far from being "nearly identical" to what he claims the defendants did in this case.

The July 20, 2011 complaint alleged that Police Officers Mayer and Grieco, along with other non-party police officers, responded to an altercation which involved one individual slicing another with a knife where the officers forced their way into an apartment in an effort to apprehend the slasher, who they had also been told was carrying a firearm. See Pl's Mem., Exhibit 1. The complaint further alleged that the officers' entry into the apartment at issue damaged the door, which was never repaired, allowing an unknown individual to later steal property from inside the apartment. Id. It was determined that Police Officers Mayer and Grieco had incomplete/improper memo book entries pertaining to the incident. Id.

The July 28, 2011 complaint alleged that Police Officers Mayer and Grieco participated in the search of an apartment for which they received consent and stole fifty dollars. See Pl's Mem., Exhibit 2. It was determined that they had incomplete/improper memo book entries pertaining to the incident. Id.

---

[3] Plaintiff cannot dispute that Police Officer Mayer set up in an adjacent backyard shortly before his arrest because coincidentally, the adjacent backyard belonged to his mother, Julia Sterling, who was deposed in this action. See Julia Sterling's November 12, 2014 Deposition, annexed to Francolla's Decl. as Exhibit "E," pp. 13: 19 – 21: 10; 25: 23 – 30: 13.

The September 16, 2011 complaint alleged that Police Officers Mayer and Grieco unlawfully entered an apartment in pursuit of an individual they considered to be a suspect and briefly detained. See Pl's Mem., Exhibit 3. The Civilian Complaint Review Board ("CCRB") exonerated the officers regarding the stop, but felt that their basis for entering the apartment was not sufficient to be considered exigent circumstances resulting in a charge of unlawful entry being substantiated. Id. CCRB also determined that the officers failed to prepare a stop and frisk form or document the interaction in their memo books. Id.

The October 29, 2011 complaint stems from a car stop which occurred in response to Police Officers Grieco and Mayer investigating a call over the radio about a shooting/man with a gun. See Pl's Mem., Exhibit 5. After the stop was conducted, Police Officer Grieco along with other officers, not including Police Officer Mayer, asked for permission to enter the apartment of one of the individuals who had been stopped which they received. Id. A brief search of the apartment was conducted which did not reveal any contraband. Id. IAB determined that Police Officer Grieco failed to have the individual who allowed him into the subject apartment sign a consent to search form, conducted an improper search once inside the apartment, failed to properly document the fact that he entered and searched the apartment, that he and Police Officer Mayer failed to fill out a form documenting the initial car stop and that they both performed anti-crime activity without a supervisor who was solely dedicated to anti-crime work. Id.

The February 15, 2012 incident involved an alleged stop and frisk which occurred on the street and allegedly involved Police Officers Grieco and Mayer neither of whom had any recollection of the incident ever taking place. See Pages from CCRB File #2012-02092, annexed to Francolla's Decl. as Exhibit "F," pp. D1024-D1032. While Police Officers Grieco and Mayer

had charges substantiated by CCRB that they failed to document the incident either by memo book or stop, question and frisk form, there was no real evidence that either was even involved in what was alleged. Id.

The July 14, 2012 complaint alleged an unlawful car stop, which was deemed unsubstantiated by CCRB, and Sergeant Dimartino, Police Officer Grieco and Police Officer Mayer had charges substantiated against them for failure to document the stop. See Pl's Mem., Exhibit 8. However, as with the February 15, 2012 incident, none of the officers recalled being involved in the stop at issue. Id.

The October 23, 2012 complaint involved allegations of unlawful entry/search and the fabrication of evidence, but there is no indication of what roles, if any, Police Officers Grieco and Mayer played. See Pl's Mem., Exhibit 4. The allegations pertaining to the entry/search/fabrication of evidence were deemed unsubstantiated and with regard to Police Officers Grieco and Mayer, it was simply determined that they had improper/inaccurate memo book entries for an incident when it was not even clear they were involved. Id.

The May 11, 2013 complaint involved allegations of an unlawful entry, search and arrest all of which were deemed unsubstantiated by IAB as to Police Officer Grieco – the only defendant involved. See Pl's Mem., Exhibit 9. The officers involved claimed they had consent to enter, a claim which the investigation was unable to refute. Id. It was determined that Police Officer Grieco's memo book was incomplete/inaccurate and he was given a command discipline. Id.

Defendants submit that like in Martin, plaintiff is unable to provide any evidence of an "earmark or signature linking these incidents to each other or the conduct in this case." . See Martin Transcript, Exhibit "A," p. 21. Also like in Martin, the differences among these

incidents predominate over their similarities.  Id.  The incidents involved different officers, different interactions with individuals the majority of whom were not even arrested and different types of inappropriate conduct.  Moreover, the incidents ranged from street interactions to car stops to entries premised on consent as well as exigent circumstances.  Thus, at best, plaintiff can only show that these "incidents are acts 'of the same class' rather than acts betraying a modus operandi."  Id. (citing Stephen v. Hanley, 03-CV-6226 (KAM) (LB), 2009 U.S. Dist. LEXIS 43334, at *38-39 (E.D.N.Y. May 21, 2009) (excluding evidence of prior incidents because they shared only general characteristics).  There is certainly no evidence to support a pattern of behavior as unique and specific as that which plaintiff alleges herein.  Accordingly, like in Martin, plaintiff should be precluded from introducing any unrelated allegations or findings of misconduct.[4]

>   **C. Even If Plaintiff Could Satisfy One Of The Exceptions To Rule 404(b), The Evidence At Issue Should Be Precluded On Rule 403 Grounds.**

Defendants submit that the probative value of introducing this evidence at trial would be extremely small, if non-existent, while the risk of unfair prejudice, confusion and waste of time would be enormous.  Even if the Court were to issue a limiting instruction, there is a significant risk that the jury will believe plaintiff in light of these prior bad acts by assuming that what may have happened in the past also happened in the present.  The introduction of this evidence would also serve to confuse the jury by focusing their attention on unrelated matters, some of which are more complicated that what happened in this case, without any clear explanation why – other than to demonstrate defendants' purported bad character.

---

[4] Defendants presume that plaintiff has abandoned any request to introduce evidence of unrelated misconduct other that which is specifically described in plaintiff's motion *in limine*.  Defendants further note that plaintiff has not sought to introduce evidence of any unrelated lawsuits against the defendants and thus, he should be barred from questioning on that subject as well.

Additionally, many of the allegations at issue, even those which were substantiated, are in dispute. Thus, assuming plaintiff is able to properly introduce any of this evidence at trial – something which is by no means guaranteed – it will force the defendants to respond in kind. As a result, admitting any of this evidence would be an invitation to try numerous civil rights cases thereby prolonging the trial in this matter to a length that could not possibly be justified by any limited probative value the evidence may have.

Accordingly, even if any of the proffered prior bad act evidence were admissible under Rule 404(b), it should be excluded pursuant to Rule 403 on the grounds that it is unduly prejudicial, not relevant, confusing and would consist of a significant waste of time.

### D. Evidence Of IAB's Investigation Into The Underlying Incident Should Be Precluded.

The IAB investigation into the underlying incident did not result in any finding of wrongdoing or discipline for any defendants pertaining to plaintiff's allegations. As noted in subpoint A, *supra*, the only discipline that resulted was with respect to Sergeant Dimartino and Police Officer Mayer for incomplete and inaccurate memo book entries on issues of absolutely no consequence to what the jury needs to decide.

Plaintiff should be precluded from introducing evidence of or even mentioning the existence of this investigation as it is not relevant, it would be unduly prejudicial to the defendants and would confuse the jury. The results of the investigation have no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401. Any probative value derived from introducing evidence of the investigation is outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. See FRE 403. It is likely the jury may hear there was an investigation and assume misconduct on the part of the officers.

Similarly, the jury could hear the result of the investigation on the substantive allegations and conclude that plaintiff's lawsuit has no merit. Like in Martin, evidence concerning an internal investigation commenced after the events at issue in this action is not relevant as it does not make it more or less likely that the defendants subjected plaintiff to the acts alleged. See Martin Transcript, Exhibit "A," p. 29. [5]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion in its entirety, together with such other and further relief as the Court deems just.

Dated:   New York, New York
         May 16, 2016

                                ZACHARY W. CARTER
                                Corporation Counsel of the City of New York
                                Attorney for Defendants
                                100 Church Street
                                New York, New York 10007
                                (212) 356-3527

                        By:            /s/
                                _____
                                Brian Francolla
                                Senior Counsel

---

[5] To the extent witnesses who will testify at trial provided statements as part of the IAB investigation that would constitute proper impeachment, those statements can simply be referred to as a statement that was given on a particular date. The only witnesses who provided statements to IAB were defendants Sergeant Dimartino and Police Officer Grieco.

- 12 -

cc:      Michael Lumer, Esq. (by ECF)
           Lumer & Neville
           225 Broadway, Suite 2700
           New York, New York 10007